```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

RONALD L. THOMAS, d/b/a American  *
Tax Service,
                                  *
     Plaintiff,
                                  *      CASE NO. 4:08-CV-14(CDL)
vs.
                                  *
UNITED STATES OF AMERICA, by and
through the Commissioner,         *
Internal Revenue Service,
                                  *
     Defendant.
                                  *

O R D E R

This action arises from the Internal Revenue Service's ("IRS") decision to suspend Plaintiff from participating in the Electronic Tax Filing Program ("EFP") for a period of two calendar years because of Plaintiff's alleged failure to properly file his customers' tax returns. Plaintiff filed suit against Defendant, seeking injunctive relief from his two-year suspension. Defendant contends that IRS suspension decisions are committed to agency discretion by law, and therefore, the Court lacks jurisdiction to review its decisions under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Plaintiff argues that even if IRS suspension decisions are beyond judicial review, the IRS's failure to follow its own regulations is reviewable. Plaintiff further contends that the IRS failed to follow its own regulations in this case because it punished Plaintiff for violating a rule which he contends does not exist. Presently pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 8)

1

and Defendant's Motion for Summary Judgment (Doc. 12).  For the following reasons, Plaintiff's motion is denied and Defendant's motion is granted.

FACTUAL BACKGROUND[1]

**I.   Substantive Facts**

Plaintiff, doing business as American Tax Service, operates a tax return preparation business and is an EFP participant. (Admin. R. 18.)  On February 28, 2006, the IRS conducted a monitoring visit at Plaintiff's office.  (*See, e.g., id.* at 53, 56-57.)  The IRS discovered that Plaintiff had a practice of habitually e-filing his customers' returns early in January without the use of Forms W-2.  Plaintiff would, instead, file his customers' returns with the customers' last pay stubs along with Forms 4852.  (*Id.*)  The IRS also discovered that, when Plaintiff filed his customers' returns with Forms 4852, he failed to include the required non-standard W-2 indicators along with the returns.  (*See, e.g., id.* at 46, 53-54, 56.)  The IRS warned Plaintiff to cease his practice of filing his customers' returns without Forms W-2.  (*Id.* at 63.)  However, Plaintiff disregarded the IRS's warnings and in 2005, the IRS

---

[1]The parties agree that the pending motions should be determined solely on the basis of the administrative record.  (*See* Proposed Scheduling Order ¶ 3, June 17, 2008).  The facts are largely undisputed in this case, and thus summary judgment is the appropriate procedural mechanism for deciding this case.  While the facts are not in dispute, the parties disagree as to the application of the law to these undisputed facts.

reprimanded Plaintiff for this practice.  (*See, e.g., id.* at 10, 23, 57.)

On May 3, 2006, Plaintiff received a "Proposed Suspension Letter" informing him that the IRS was proposing to suspend his participation in the EFP because of his failure to properly file his customers' returns.  (*Id.* at 50.)  The suspension was for one calendar year.  (*Id.*)  On May 30, 2006, Plaintiff timely asked the IRS to reconsider its proposed suspension.  (*Id.* at 41-43.)  However, on October 26, 2006, the IRS reaffirmed its proposed suspension of Plaintiff's participation in the EFP and extended Plaintiff's proposed suspension to a period of two calendar years.  (*Id.* at 40.)

On November 20, 2006, Plaintiff timely appealed his suspension under the IRS administrative appeals process.  (*Id.* at 37-38.)  An appeals conference was held on April 20, 2007 between the appeals officer and Plaintiff's representative.  During the appeals conference, the appeals officer explained to Plaintiff that Plaintiff had "to wait at least until the time prescribed (1/31) before using the last pay statement." (*Id.* at 16.)  However, when Plaintiff asked where the date restriction was written, Plaintiff was informed "that he wouldn't find it in the code since it [was] not codified." (*Id.*) The IRS further explained that "the publication [did] not state a date when [Form 4852] [could] be used," but that "it [was] common knowledge that the employers ha[d] until January 31, 2006 to provide their employees with a Form W-2." (*Id.* at 56-57.)  On May 9, 2007,

3

the IRS issued its Decision on Appeal sustaining the suspension of Plaintiff's participation in the EFP. (*Id.* at 1-3.) The IRS noted that the suspension was effective April 17, 2007. (*Id.* at 1.)

## II. Procedural Facts

On February 5, 2008, Plaintiff filed an action in this Court against Defendant, seeking injunctive relief from the IRS's decision to suspend Plaintiff from participating in the EFP for a period of two calendar years.[2] Plaintiff and Defendant filed cross-motions for summary judgment. Defendant contends that IRS suspension decisions are committed to agency discretion by law, and therefore, the Court lacks jurisdiction to review its decisions under the APA. Plaintiff argues that even if IRS suspension decisions are beyond judicial review, the IRS's failure to follow its own regulations is not. Plaintiff further contends that the IRS failed to follow its own regulations because it punished Plaintiff for violating a rule which he contends does not exist.

## DISCUSSION

## I.  Judicial Review under 5 U.S.C. § 701(a)(2)

Defendant contends that IRS suspension decisions are committed to agency discretion by law, and therefore, the Court lacks jurisdiction over this action pursuant to the APA. Plaintiff

---

[2]Plaintiff brings this action pursuant to 5 U.S.C. § 702, which permits a party to bring an equitable claim challenging an alleged arbitrary and capricious action of an administrative agency in federal district court.

4

contends that the action is reviewable by this Court because the applicable law in this case does not prohibit judicial review and does not commit Defendant's action solely to agency discretion.

### A.   APA Principles

The APA allows any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" to obtain "judicial review thereof."  5 U.S.C. § 702.  Although there is a presumption that action taken by a federal agency is reviewable in federal court, *see Save The Bay, Inc. v. Adm'r of the Envtl. Prot. Agency*, 556 F.2d 1282, 1293 (5th Cir. 1977),[3] the APA precludes judicial review when the "agency action is committed to agency discretion by law[,]" 5 U.S.C. § 701(a)(2).[4]  This APA exception is very narrow and applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotation marks omitted), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[4]The APA also precludes judicial review when the "statutes preclude judicial review[.]"  5 U.S.C. § 701(a)(1).  This subsection "is concerned with whether Congress expressed an intent to prohibit judicial review[.]"  *Webster v. Doe*, 486 U.S. 592, 599 (1988).  In this case, it is undisputed that the applicable law does not expressly preclude judicial review.  (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. 3; Mem. Supp. Def.'s Mot. Summ. J. 4.)

Under § 701(a)(2) of the APA, judicial review is not available "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008).  In other words, "[i]f there are no judicially manageable standards available for judging how and when an agency should exercise its discretion, then it is impossible to determine even whether the agency abused its discretion."[5]  *State of Fla., Dep't of Bus. Regulation v. U.S. Dep't of Interior*, 768 F.2d 1248, 1255 (11th Cir. 1985).  Not only does § 701(a)(2) "require[] careful examination of the statute on which the claim of agency illegality is based," *Webster*, 486 U.S. at 600, but "[a]n agency regulation may provide that law to apply" as well, *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1003 (5th Cir. 1981).  Thus, the Court must look to the applicable statute, as well as the applicable agency regulations, to determine whether there is "sufficient law to apply as to allow judicial review." *Greenwood Utils. Comm'n v. Hodel*, 764 F.2d 1459, 1464 (11th Cir. 1985) (internal quotation marks omitted).

---

[5] The Supreme Court has opined that the APA's "arbitrary and capricious" standard cannot, by itself, provide the standard for courts to apply in evaluating an agency's decision. *See Heckler*, 470 U.S. at 829-30.

6

B.   Analysis of the Applicable Law

In this case, the Court must look to the applicable statute, as well as the applicable agency regulations, to determine whether judicial review is allowed.  Thus, in this case, the Court must look to the public guidance provided under 26 U.S.C. § 6012, 26 C.F.R. § 1.6012-5, and Revenue Procedure 2005-60.[6]  First, § 6012, which concerns "[p]ersons required to make returns of income," provides for the filing of income returns, but it is silent as to the EFP and is silent as to judicial review.  Section 6012 has no standards for the issuance of regulations, particularly regarding the EFP.  Therefore, § 6012 provides little guidance for the Court to evaluate the IRS's suspension decision in this case.

Second, the language in 26 C.F.R. § 1.6012-5 also shows that the decisions relating to the EFP are left to the discretion of the IRS.  The treasury regulation addresses the EFP generally and provides that the Commissioner may authorize the use of technology for the preparation of returns, pursuant to the conditions and limitations as may be prescribed by the Commissioner.  Specifically, 26 C.F.R. § 1.6012-5 provides that

> [t]he Commissioner may authorize the use, at the option of a person required to make a return, of a composite return in lieu of any form specified in this part for use by such a person, subject to such conditions, limitations, and special rules governing the preparation, execution, filing, and correction thereof as the Commissioner may deem appropriate.

---

[6]Although Revenue Procedure 2005-60 has been superseded by Revenue Procedure 2007-40, Revenue Procedure 2005-60 was in effect at the time of Plaintiff's alleged prohibited e-filing conduct and subsequent suspension.

> Such composite return shall consist of a form prescribed by the Commissioner and an attachment or attachments of magnetic tape or other approved media.  Notwithstanding any provisions in this part to the contrary, a single form and attachment may comprise the returns of more than one such person.  To the extent that the use of a composite return has been authorized by the Commissioner, references in this part to a specific form for use by such a person shall be deemed to refer also to a composite return under this section.

This language demonstrates that decisions relating to the use of alternative filing media are left to the discretion of the IRS.

Third, while Revenue Procedure 2005-60 provides guidance as to the EFP, it leaves EFP suspension decisions to the IRS's sole discretion.  Specifically, section 7.01 provides that "[t]he Service may sanction an Authorized IRS *e-file* Provider for violating any provision of this revenue procedure or the publications and notices governing IRS *e-file*."  Furthermore, the only guidance section 7.02 gives the Court is a list of what sanctions can be given, which include "a written reprimand, suspension or expulsion from the program, and other sanctions, depending on the severity of the infraction."  In addition, IRS Publication 3112, which describes the infraction categories and the rules governing the imposition of sanctions, provides, in pertinent part, that the level of an individual infraction is determined solely by "the opinion of the IRS."  IRS Publ'n 3112 at 26. Thus, the imposition of sanctions rests solely in the discretion of the IRS. As such, both the determination of the severity of the infraction, as well as the corresponding sanction, are left to the IRS's discretion.

Based on a review of the applicable law in this case, it is clear that IRS suspension decisions are left to the sole discretion of the IRS. *See Lenis*, 525 F.3d at 1293 (dismissing plaintiff's petition for review of the Board of Immigration Appeals' decision because the applicable law did not provide a meaningful standard against which to judge the agency's exercise of discretion); *State of Fla., Dep't of Bus. Regulation*, 768 F.2d at 1255-57 (concluding that the Secretary of the Interior's decision to acquire a tract of land was unreviewable because not only was the decision within the Secretary's discretion but also the applicable law did not delineate the circumstances when exercise of the discretion was appropriate); *see also Ellison v. Connor*, 153 F.3d 247, 254 (5th Cir. 1998) (affirming the district court's finding that it lacked jurisdiction under the APA to review the substance of the United States Army Corps of Engineers' decision to prohibit construction of structures in floodway easement because the applicable law "exude[d] discretion" to the Secretary of the Army (internal quotation marks omitted); *Peanut Ass'n v. Lyng*, 734 F. Supp. 519, 522-23 (M.D. Ga. 1990) (finding that court did not have jurisdiction under the APA because the provision of Agricultural Adjustment Act giving Secretary of Agriculture discretionary authority to set reasonable shrinkage allowance for export peanuts did not furnish court with any law to apply); *cf. Bateman Co. v. U.S. Dep't of Agric.*, 123 F. Supp. 2d 625, 630-32 (M.D. Ga. 2000) (finding that it had jurisdiction to review

Department of Agriculture's decision that landlords had improperly received deficiency and disaster relief funds because applicable law provided standards against which action of Department could be analyzed).  Accordingly, the Court finds that IRS suspension decisions regarding the Electronic Tax Filing Program are not judicially reviewable.

    C.    <u>A Review of the IRS's Adherence to its Own Regulations</u>

Although IRS suspension decisions are beyond judicial review, the IRS's failure to follow its own regulations is reviewable under the APA.  *See Webster*, 486 U.S. at 602 n.7.  Plaintiff contends that the IRS failed to follow its own regulations because it punished him for violating a rule which he contends does not exist.  The Court must determine whether the IRS followed its own regulations in suspending Plaintiff.

    *1.    The IRS's Suspension Decision*

The IRS "may sanction an Authorized IRS *e-file* Provider for violating any provision of [Revenue Procedure 2005-60] or the publications and notices governing IRS *e-file*." Rev. Proc. 2005-60, § 7.01.  Sanctions that the IRS may impose in response to a violation of the rules "include a written reprimand, suspension or expulsion from the program, and other sanctions, depending on the severity of the infraction." Rev. Proc. 2005-60, § 7.02; *see* IRS Publ'n 3112 at 25-26.

10

In this case, the IRS suspended Plaintiff from participating in the EFP for two calendar years because of his habitual practice of e-filing his customers' returns before receipt of their Forms W-2.[7] (Admin. R. 1-3.)  Instead of filing his customers' returns with Forms W-2, Plaintiff filed his customers' returns with their last pay stubs along with Forms 4852.  When Plaintiff filed his customers' returns with Forms 4852, he failed to include the required non-standard W-2 indicators.[8]  The IRS had previously warned Plaintiff not to file returns prior to receiving his customers' Forms W-2 (Admin. R. 63), and the IRS subsequently reprimanded him for continuing to do so (*see, e.g.*, *id.* at 10, 23, 57).  Plaintiff's two-year suspension was rated as a Level Three Infraction, which "are violations of IRS *e-file* rules and requirements that, in the opinion of the IRS, have a

---

[7]Pursuant to 26 U.S.C. § 6051(a), employers must issue Forms W-2 to their employees for wages paid during a calendar year by January 31 of the next year.

[8]IRS Publication 1345 provides, in pertinent part, that

> [a]n [Electronic Return Originator] must originate the electronic submission of a return as soon as possible after it is signed.  Individual income tax returns must not be electronically filed prior to the ERO's receipt of Forms W-2, W-2G, or 1099-R.  If the taxpayer is unable to secure and provide a correct Form W-2, W-2G, or 1099-R, the return may be electronically filed after Form 4852 is completed in accordance with the use of that form.  *If Form 4852 is used, the non-standard W-2 indicator must be included in the record and the Form 4852 must be retained by the ERO in the same manner required for Forms W-2, W-2G, and 1099-R.*

IRS Publ'n 1345 at 27 (emphasis added).

significant adverse impact on the quality of electronically filed returns or on IRS *e-file*."  IRS Publ'n 3112 at 26.

Plaintiff contends that he filed his customers' returns with Forms 4852 only if the customers indicated that they were unable to obtain their Forms W-2 or 1099-R from their employers. (*See* Pl.'s Mem. Supp. Mot. Summ. J. 12-14.)  However, this contention is not supported by the record.  Plaintiff stated that he had previously "put [his] EFIN number in [the] store and directed the office manager to file the return without the W-2 if the customer was going to leave [his] office, and go to another tax office to file without their W-2." (Admin R. 41.)  It is clear from the record that Plaintiff's desire to file his customers' returns before receipt of their Forms W-2 was purely economic; Plaintiff could not "afford to continue to lose business because of this issue." (*Id.*)  Regardless of Plaintiff's reason for prematurely filing his customers' returns, the fact still remains that Plaintiff violated the rules governing the EFP.

Plaintiff also contends that neither IRS Publication 1345, nor any other applicable rule or regulation, provides that a tax preparer must wait until January 31 before filing a customer's tax return without a Form W-2.  Thus, Plaintiff contends that the IRS failed to follow its own regulations when it suspended Plaintiff.  IRS Publication 1345 clearly provides that "[i]ndividual income tax returns must not be electronically filed prior to the ERO's *receipt*

12

of Forms W-2, W-2G, or 1099-R." IRS Publ'n 1345 at 27 (emphasis added). In addition, 26 U.S.C. § 6051(a) clearly provides that employers must issue Forms W-2 to their employees regarding the wages paid to them during each calendar year by January 31 of the next year. Thus, the Court finds it clear based on the applicable law that tax preparers must wait until January 31 to receive their customers' Forms W-2. Even assuming *arguendo* that tax preparers do not have to wait until January 31 to receive their customers' Forms W-2, the Court nonetheless finds that the IRS followed its own regulations when it suspended Plaintiff because Plaintiff violated the rules when he failed to include the non-standard W-2 indicators along with his customers' Forms 4852. (*See, e.g.*, Admin. R. 46, 53-54, 56); *see* IRS Publ'n 1345 at 27.

*2.   The IRS's Administrative Review Process*

The Court also finds that the IRS followed the appropriate administrative review process regarding Plaintiff's suspension. The IRS provides an administrative review process within the IRS for program participants who may have been subject to sanctions. *See* IRS Publ'n 3112 at 26. An authorized IRS e-file provider has the right to administrative review of either a proposed or an immediate sanction. *Id.* The IRS e-file provider must provide a written explanation as to why the sanction should be withdrawn within thirty calendar days of the date the IRS issued the sanctions letter. *Id.* Upon receipt of the provider's explanation, "the IRS will reconsider

13

and may either withdraw or affirm the sanction in writing." *Id.* If the IRS affirms the sanction, the e-file provider has thirty days to appeal to the IRS Office of Appeals. *Id.* The e-file provider's written appeal "must contain detailed reasons, with supporting documentation, to show why the recommended suspension or expulsion should not be imposed." *Id.*

In this case, Plaintiff was notified of his proposed suspension from the EFP. (Admin. R. 50.) Plaintiff wrote a letter to the IRS asking it to reconsider its proposed suspension. (*Id.* at 41-43.) In response, the IRS affirmed Plaintiff's suspension. (*Id.* at 40.) Plaintiff timely appealed his suspension to the IRS Office of Appeals, which issued a decision affirming Plaintiff's two-year suspension. (*Id.* at 1-3.) Thus, based on a review of the administrative record, the Court finds that the IRS adhered to its own administrative review process in this case.

## CONCLUSION

The Court finds that the APA precludes judicial review of IRS suspension decisions regarding the Electronic Tax Filing Program. The Court further finds that the IRS adhered to its own regulations in suspending Plaintiff from the EFP for two calendar years. Accordingly, the Court denies Plaintiff's Motion for Summary Judgment (Doc. 8) and grants Defendant's Motion for Summary Judgment (Doc. 12).

IT IS SO ORDERED, this 9th day of February, 2009.

                                        S/Clay D. Land
                                          CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE